### SEMAN KLOUS *vs.* COMMONWEALTH.

Norfolk.    March 9, 1905. — May 18, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Damages.    Evidence*, Opinion: expert.    *Witness.*

On a petition for damages from the taking of the petitioner's land on a bank of a river by the metropolitan park commissioners under St. 1893, c. 407, and St. 1895, c. 450, if the instrument of taking expressly excepts all rights to take and use the waters of the river for mechanical or manufacturing purposes and rights of flowage, "as well as the right to keep up, maintain, reconstruct, alter and use any water mill, mill privilege, canal, flume, raceway, mill dam, or flash boards, now lawfully existing or used, together with the right to enter upon the reservation" established by the taking, "so far as necessary to the use and enjoyment of the rights herein excepted," the petitioner is entitled to no damages for the loss of any right to use the land incident to the use of the waters, all such rights being included in the exception whether the structures necessary for such use existed at the time of the taking or not, the taking also excepting all existing structures even though they might not be necessary for the best use of the water in the way it was being used.

On the issue of the value of land at Hyde Park on a bank of the Neponset River taken by the metropolitan park commissioners under St. 1893, c. 407, and St. 1895, c. 450, it is within the discretion of the presiding judge to refuse to allow a witness who never had lived in Hyde Park or bought or sold property there and was not shown to have special knowledge of values there, to testify as an expert as to the amount of the damage to the petitioner, although the witness was in the real estate business in Boston and had had experience as a civil engineer and as a builder and repairer of textile mills, and at one time had charge of a mill in New Hampshire and of another at Lawrence, was the owner

of a manufacturing site in Everett, had built and sold a chemical factory at Newton Upper Falls on the Charles River, and had some knowledge as to the general value of manufacturing property. Especially is such discretionary exclusion justified where the witness's testimony already given had shown that his opinion on the question of damages probably was affected by an erroneous view of the rights of the parties.

PETITION, filed September 24, 1900, by the owner of land on the northerly bank of the Neponset River in the town of Hyde Park near the River Street station on the midland division of the New York, New Haven, and Hartford Railroad Company, taken on December 20, 1899, by the metropolitan park commissioners under St. 1893, c. 407, and St. 1895, c. 450.

In the Superior Court the case was tried before *Pierce*, J. After the witness Joseph Stone had given the testimony referred to in the opinion, the petitioner offered to show by him that the entire damage caused by the taking was $70,000, but the judge ruled that the witness was not qualified as an expert, and excluded the evidence.

At the close of the evidence the petitioner requested the following rulings: 1. The petitioner is not now entitled to all the rights of a riparian owner in and to the waters of the Neponset River. 2. The petitioner now has no right to take water from the Neponset River through a canal or trench not now existing, which right he possessed before the taking. 3. The petitioner has no right to build or maintain a filter well or gallery not now in existence on the land taken in order to take the water from the river by filtration. 4. The petitioner has no right to take water from the Neponset River in any different way than that in which it has been taken by him before the taking. 5. The petitioner has no right to drain water from the remaining portion of his land not taken by the Commonwealth, over the surface of the land taken by the Commonwealth, to the river. 6. The petitioner has no right to cause water, taken from the river and used on the remaining portion of his land, to flow back to the river by a canal or trench not now existing through the land taken.

The judge refused to make any of these rulings, and instructed the jury among other things that the metropolitan park commissioners have nothing whatever to do with the regulation of waters, which expressly were excluded from their taking.

The jury returned a verdict for the petitioner in the sum of

$9,290.40, which was much less than he claimed; and the petitioner alleged exceptions.

*J. E. Cotter & J. P. Fagan,* for the petitioner.

*R. G. Dodge,* Assistant Attorney General, (*A. Marshall* with him,) for the Commonwealth.

KNOWLTON, C. J.   This case presents two questions: one relates to the construction of the exception in the instrument of taking, and the other to the competency of a witness, offered as an expert, to give his opinion upon the amount of damages caused by the taking of the petitioner's land for a public park.

This land is in Hyde Park, on the northerly bank of the Neponset River, a part of it being on the side and a part in the bed of the stream.   The instrument of taking contains an exception as follows: "Expressly excepting, however, from the foregoing descriptions and from the operation of the taking hereby made, and for the use and benefit of the persons or corporations lawfully entitled to the rights and privileges hereinafter mentioned, and their respective heirs, successors and assigns, all lawful rights to take or use the waters of said Neponset River, or the power derived therefrom, for any mechanical or manufacturing purposes, also all lawful rights of flowage, as well as the right to keep up, maintain, reconstruct, alter and use any water mill, mill privilege, canal, flume, raceway, mill dam or flash boards, now lawfully existing or used; together with the right to enter upon the reservation hereby established so far as necessary to the use and enjoyment of the rights herein excepted."   The taking included lands of different owners along the river.

The first part of this exception, ending with the word "flowage," leaves out of the property taken and secures to the owners in the amplest way, for mechanical or manufacturing purposes, all water rights belonging to the property a part of which is taken. *Tyler* v. *Hudson,* 147 Mass. 609.   *Conness* v. *Commonwealth,* 184 Mass. 541.   This, with the right to enter upon the land taken, includes all uses of the land necessarily incident to the use of the water.   The jury were instructed accordingly, and if the exception contains no limitation of these rights, there is no ground of objection to the charge.

The petitioner contends that the right to maintain and reconstruct any of the structures mentioned " now lawfully existing or

used" limits the right to use the water to the methods which previously had been adopted. We do not so interpret the language. We are of opinion that it was intended to secure the right to maintain the existing structures mentioned, even though they might not be necessary for the best use of the water in the way that the owner was using it. It is quite conceivable that there might be such structures which were not well adapted to the proper appropriation of the water, and this provision secures to the owners the right to maintain them. It cannot properly be construed as a limitation of the right to use the water secured in other parts of the exception without mention of the structures to be employed.

The witness Stone was allowed to testify as an expert upon all matters as to which he had special knowledge, unless it be held that he had special knowledge of the amount in money necessary to compensate the petitioner for the property taken. He never had lived in Hyde Park, or bought or sold property there, and there was nothing to show that he had special knowledge of values there. He was in the real estate business in Boston, and he had had experience as a civil engineer and as a builder and repairer of textile mills. He had charge at one time of the Manchester mills in Manchester, New Hampshire, and afterwards of the lower Pacific mills at Lawrence. He was also the owner of a manufacturing site in Everett, and he had built and sold a chemical factory at Newton Upper Falls on the Charles River, and he had some knowledge as to the general value of manufacturing property. We are of opinion that it was within the discretion of the court, in view of all the facts of the case, to admit or exclude his opinion as to the amount of damages. The rules to be applied to such offers were discussed in *Conness* v. *Commonwealth*, 184 Mass. 541, as well as in the earlier case of *Cochrane* v. *Commonwealth*, 175 Mass. 299. See also *Lakeside Manuf. Co.* v. *Worcester*, 186 Mass. 552, 560. The witness testified that in his opinion " the park commissioners might cut off the water or restrict the use of the water or the manner of getting it or the times of getting it." Presumably his opinion on the question of damages was affected by this view of the rights of the parties, which was contrary to the law as laid down by the court. There was no error in the exclusion of the testimony.

*Exceptions overruled.*