BRUNOT, J.
 

 This is a suit for damages. The defendant company is engaged in the business' of investigating matters of record which relate to or may affect the title to real property, and to furnish its employer with an abstract thereof. The Lee Lumber Company, Limited, owns many tracts of timbered lands, and a large quantity- of growing timber upon lands the title to which is vested in others. It entered into a contract with the Hetherwick Title Company, Inc., to furnish it with abstracts of title to all of its holdings. The defendant company performed the work, but the abstract it furnished to the plaintiff of the Aycock deed was erroneous, defective, and misleading, and this breach of the alleged contract resulted in the loss and damage to plaintiff which gave rise to this suit. The prayer of plaintiff’s petition is for_a judgment against defendant for $2,125.22, with 5 per cent, per annum -interest thereon from May 5, 1922, and from a judgment for the'sum and interest thereon as prayed for the defendant appealed.
 

 The defendant excepted to the petition as not disclosing a cause of action. The exception was overruled, and the answer sets up the following defenses to- the suit:
 

 First. That the defendant was not employed to trace down and show all timber ex-pirations ; it being employed only to make a list of all sales and purchases made by the Lee Lumber Company, and the description of the property conveyed or purchased.
 

 Second. That, regardless of its employment, it was not guilty of negligence, because the time limit for the removal of the timber in the Aycock deed is in the habendum clause of the deed, and, for that reason, defendant’s clerk failed to copy it;- that Mr. Calvit, the manager of the defendant company, was under the misapprehension that the plaintiff company wanted only an unverified memorandum of its sales and purchases, and he therefore did not check the work of his clerk, and that the plaintiff company was the vendee in the Aycock deed, and the notary public who executed the deed was in its employ, and,
 
 *981
 
 therefore, the plaintiff company was charged with knowledge of the recitals of that deed.
 

 The defendant company contends that plaintiff’s petition does not specifically charge it with negligence or failure to exercise ordinary care and skill in its performance of the work, and it predicates its exception of no cause of action upon these omissions.
 

 An accurate summary of the facts alleged in the petition appears in plaintiff’s brief. We will follow the sequence in which the recitals in the petition are made, but will take the liberty of adopting so much of the phraseology of plaintiff’s summary as will facilitate us in curtailing our statement of the pleadings.
 

 The petition alleges that plaintiff was continuously engaged in the acquisition of timber and timber lands from 1905 to 1919, and it had become the owner of vast tracts of timber and of lands from various and numerous vendors; that many of its timber deeds contained time limits for the removal of the timber; that plaintiff had no record in its office or in any of its departments of these various deeds; that the defendant title company, from years of experience in the business of abstracting, had acquired a reputation for accuracy and thoroughness in that work; that plaintiff employed the title company to make a written abstract of each purchase and sale made by it as same appeared on file and of record in Rapides parish in respect to timber and land there situated; and to show in the abstracts of acquisitions, specifically and particularly, the existence or nonexistence of time limits in the deeds for the removal of timber, with the explanation that the time limit expirations were particularly desired by the plaintiff; that the title company accepted the employment, and delivered to plaintiff, about September 9,1919, abstracts showing the lands and timber acquired and sold by plaintiff, and the periods and absence of periods, in the various deeds, for the removal of the timber; that the abstract of the Aycock timber deed which was delivered to plaintiff states affirmatively that there is no time limit in that deed for the removal of the timber, the exact language being : “With right of way, but no time limit for same,or removal of timber. Present improvements not to be interfered with” ; that between September 9,1919, and June 24,1920, the expiration date in the Aycock deed, plaintiff had ample time within which to cut and remove the timber, and would have done so but for its reliance upon the dependability of the defendant company and the accuracy of the abstract it had, delivered to plaintiff; that, after June 24, 1920, plaintiff was advised that the time limit in the Aycock deed had expired; that upon investigation it learned of the error in the abstract; that defendant company then admitted the error; that both the plaintiff and defendant company vainly tried to secure an extension of the time for the removal of the timber; and, thereafter plaintiff succeeded in purchasing the timber for its fair value, not only at the time of purchase, but at any time during the period from November, 1919, to June, 1920, the time which elapsed between the delivery of the abstract and the expiration of the time limit in the Aycock deed.
 

 We think the petition alleges a cause of action, and that defendant’s exception of no cause of action was correctly overruled. The fact of negligence or want of care and skill in the performance of work are legal conclusions which are deducible from a given statement of facts. If the petition alleges facts which show negligence or a failure to exercise care and skill in the discharge of a duty, that is all the law requires. No duty rests upon the pleader to allege mere legal conclusions.
 

 “Conclusions of law do not have to be alleged.” Hale v. Gilliland Oil Co., 91 So. 853, 151 La. 500.
 

 
 *983
 
 In this connection the following is quoted from Corpus Juris:
 

 “The complaint in an action against an abstracter must state sufficient facts to constitute a cause of action, and must allege facts and not conclusions. It should allege or show the nature of the agreement or character of the abstract to be furnished; that the abstract was defective or not such as it was the duty of the defendant to furnish; that plaintiff relied and acted upon the abstract furnished, and that he has been damaged thereby.” 1 C. J. p. 371.
 

 The defense that the defendant company “was not employed to trace down and show all timber expirations” presents a question of fact. The positive testimony' of Mr. Lee, Mr. Peek, and Mr. Overton, and all of the circumstantial evidence in the record, conclusively establishes the fact that the plaintiff company was chiefly concerned in securing abstracts showing its timber expirations; and the testimony of Mr. Overton, who is corroborated by Mr. Peek, affirmatively shows that, when the .contract of employment was made with the defendant company, the necessity for data showing all timber expirations in the plaintiff’s acquisitions of timber was especially emphasized, and that the contract which Mr. Overton testifies he made on behalf of the plaintiff company with Mr. L. D. Oalvit, the manager of the defendant company, was as follows:
 

 “I will make an abstract on a regular abstract form of each purchase by the Lee Lumber Company and of each sale by them. Of course this abstract will show the timber ex-pirations and will give the descriptions of the lands, the dates of purchases and sales and the consideration, and all the information that is shown on one of these abstract forms.”
 

 The only witness for defendant upon the question of employment or contract is Mr. L. D. Calvit. This witness says that he was requested to make a list or memorandum of the sales and purchases made by the Lee Lumber Company, including the description of the property purchased, and that timber ex-pirations were not mentioned. The record | discloses that every abstract made by defendant company for the plaintiff of the acquisition of timber shows the existence or nonexistence of a time limit. Even the abstract of the Aycock deed shows that there was no time limit for the removal of the timber, when, as a matter of fact, that deed limited Jhe time of removal to four years. We do not think it necessary to review all of the direct and circumstantial evidence on this point. The preponderance is so strongly in favor of the plaintiff as to leave no room for doubt in our minds.
 

 The contention that defendant is not chargeable with negligence because the time limit for the removal of the timber is in the habendum clause of the Aycock deed, and that Mr. Calvit, being under a misapprehension as to the data plaintiff wanted, did not cheek the work of his clerk, does not impress us as being worthy of serious consideration. The manager of the defendant company frankly admits that an abstracter should read the entire deed. There appear in this record other timber deeds in which the time limit was incorporated in the habendum clause, notably the Mrs. Wilson, Wiley, Zwahlen, and Hickman deeds. The defendant company correctly abstracted all of the deeds in which the timber expirations appear in the habendum clause except fhe Aycock deed; and the judicial admission of defendant’s manager that, because of his misapprehension, he failed to check his clerk’s work relieves us of the necessity of commenting upon that defense.
 

 The contention that defendant is not liable because it did not sign or certify to the correctness of the abstracts it furnished . the plaintiff is untenable. Defendant’s contractual obligation ' was to furnish correct data from the records, and its delivery of the abstracts to the plaintiff was an assurance that they correctly reflected the records. We do not think that the omission of defendant to sign or to affix its certification
 
 *985
 
 to the abstracts lessened its contractual obligation. The defense that the plaintiff had constructive knowledge of the contents of the Aycock deed because it was the vendee therein and the notary who executed the deed was its employee is of no force in this case, because it is conclusively shown that plaintiff had no record of its timber expirations; that it had. suffered losses by reason of its ignorance of them; and that the object and purpose of its contract with defendant was to obtain this information.
 

 “The general rule is that one who is employed to investigate the title to real property, for compensation, impliedly contracts to exercise reasonable care and skill in the performance of the undertaking, and if he fails to exercise such care and skill he is responsible to his employer for the loss occasioned thereby.” Equitable Bldg. & Loan Ass’n v. Bank of Commerce, etc., Co., 102 S. W. 901, 118 Tenn. 678, 12 L. R. A. (N. S.) 449, 12 Ann. Cas, 407; Brown v. Sims 53 N. E. 779, 22 Ind. App. 317, 72 Am. St. Rep. 308.
 

 In Stephenson v. Cone, 124 N. W. 439, 24 S. D. 460, 26 L. R. A. (N. S.) 1207, a well-considered case, the court said:
 

 “One who undertakes the examination of titles, for compensation, is liable for want of ordinary care and skill in the performance of that task. To furnish abstracts of title is a business—a sort of a profession. The party undertaking it assumes the responsibility of discharging his duty in a skillful and careful manner. That is just what he is paid for doing. Patience in the investigation of records is the main capacity required. There are no professional opinions required ,of the abstracter. It is his duty to furnish facts from the records, without concern for their legal effect. * * * The abstracter collects the evidence from the records, and notes the same on the abstract, and if he makes a mistake or oversight or omission, resulting in damage, he must respond to the injured party.”
 

 In Renkert v. Title Guarantee Trust Co., 76 S. W. 641, 102 Mo. App. 267, the court said:
 

 “The company undertook to inform him concerning the state of the title in order that he might buy intelligently, and furnished a document purporting to inform him. The document left off a judgment lien, which omission not only tended to mislead the plaintiff, but was nearly certain to mislead him. Misleading information is worse than none. It was actionable negligence to furnish such a document, call it abstract, chain of title, or what you will; for it was delivered and accepted as something on which a prospective purchaser might base his decision to buy or not.”
 

 The general rule is concisely stated in Corpus Juris:
 

 “One who engages in the business of making abstracts of title impliedly undertakes that he possesses the requisite skill and knowledge, and that he will exercise due care and skill in the performance of his duties, and for a failure to do so he will be liable in damages.” 1 C. J. p. 368.
 

 The proof shows that the plaintiff made .an earnest effort to minimize its losses by securing an extension of the time limit for the removal of the timber on the Aycock land, and that the price it finally paid for it was the fair value of the timber at the date of its repurchase, and at the date it was lulled into fancied security by the erroneous and misleading information contained in the abstract of the Aycock deed which defendant had prepared and furnished to the plaintiff.
 

 For these reasons we find that the judgment appealed from is correct, and it is therefore affirmed, at appellant’s cost.
 

 OVERTON, J., recused.